UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

MICHAEL GRECCO and MICHAEL GRECCO
PRODUCTIONS, INC.,

               *Plaintiffs*,

               v.

AGE FOTOSTOCK AMERICA, INC.,

               *Defendant*.

Case No.: 21-cv-00423 (JSR)

 

**DEFENDANT AGE FOTOSTOCK AMERICA, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEYS' FEES**

Nancy E. Wolff
Sara Gates
COWAN, DeBAETS, ABRAHAMS
 & SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel.: (212) 974-7474
Fax: (212) 974-8474

*Attorneys for Defendant Age Fotostock
America, Inc.*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ..........................................................................................................3

ARGUMENT ...............................................................................................................................6

     I.     THE COURT SHOULD AWARD DEFENDANT ITS
           COSTS AND REASONABLE ATTORNEYS' FEES ........................................6

           A.     Plaintiffs Knew That Their Case Was Baseless, Yet Still Proceeded..........7

           B.     An Award of Reasonable Attorneys' Fees to Defendant
                   Would Be Faithful to the Purposes of the Copyright Act .........................12

           C.     Defendant's Attorneys' Fees and Costs Are Reasonable .........................14

CONCLUSION.........................................................................................................................16

## **TABLE OF AUTHORITIES**

**Cases**                                                                            **Page(s)**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v.*
   *County of Albany & Albany Cty. Bd. Of Elections*,
   522 F.3d 182, 189–90 (2d Cir. 2008)..................................................................14

*Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.*,
   No. 01 CIV. 10135(SAS), 2003 WL 22434153, at \*3, \*5 (S.D.N.Y. Oct. 24, 2003) .......11, 13

*Baker v. Urb. Outfitters, Inc.*,
   431 F. Supp. 2d 351, 358, 359–60 (S.D.N.Y. 2006).............................................8, 13

*Berry v. Deutsche Bank Tr. Co. Ams.*,
   632 F. Supp. 2d 300, 305 (S.D.N.Y. 2009)....................................................12–13

*Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*,
   No. 99 CIV. 9623, 2009 WL 4276966, at \*5–6 (S.D.N.Y. Nov. 30, 2009) .........................7–8

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*,
   532 U.S. 598, 603 (2001).........................................................................7

*Contractual Obligation Prods., LLC v. AMC Networks, Inc.*,
   546 F. Supp. 2d 120, 126 (S.D.N.Y. 2008)........................................................9

*Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*,
   246 F.3d 142, 151 (2d Cir. 2001)...............................................................14

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517, 534 n.19 (1994)................................................................6–7

*Hensley v. Eckerhart*,
   461 U.S. 424, 433 (1983)......................................................................14

*Hughes v. Benjamin*,
   No. 17-CV-6493 (RJS), 2020 WL 4500181, at \*4 (S.D.N.Y. Aug. 5, 2020).........................12

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*,
   No. 03 Civ. 1548(GBD)(AJP), 2008 WL 4613752, at \*15 (S.D.N.Y. Oct. 17, 2008)............16

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   136 S. Ct. 1979, 1988–89 (2016)................................................................7

*Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*,
   No. 13-CV-1526 (RJS), 2020 WL 2848232, at \*6 (S.D.N.Y. June 1, 2020) .........................15

*Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*,
   No. 20-2332-CV, 2021 WL 4536898, at *2 (2d Cir. Oct. 5, 2021)........................................14

*Littel v. Twentieth Century-Fox Film Corp.*,
   No. 89 CIV. 8526(DLC), 1996 WL 18819, at *3 (S.D.N.Y. Jan. 18, 1996) ......................9–10

*Nat'l Football League v. PrimeTime 24 Joint Venture*,
   131 F. Supp. 2d 458, 484 (S.D.N.Y. 2001)............................................................................16

*Porto v. Guirgis*,
   659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009)..............................................................................8

*Torah Soft Ltd. v. Drosnin*,
   No. 00 CIV. 5650 (JCF), 2001 WL 1506013, at *6 (S.D.N.Y. Nov. 27, 2001) .....................13

*U.S. Media Corp. v. Edde Ent., Inc.*,
   No. 94 CIV. 4849 (MHD), 1999 WL 498216, at *2 (S.D.N.Y. July 14, 1999) .....................14

**Rules & Statutes**

17 U.S.C. § 505...................................................................................................................1, 6

28 U.S.C. § 1920......................................................................................................................16

Fed. R. Civ. P. 54...............................................................................................................1, 6

Defendant Age Fotostock America, Inc. ("Defendant" or "AF America") respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 54(d) and 17 U.S.C. § 505, for an award of its costs and reasonable attorneys' fees as the prevailing party in this action.

## PRELIMINARY STATEMENT

Defendant, as the prevailing party on summary judgment, seeks its costs and attorneys' fees incurred in its successful defense of this action. As this Court may be aware, plaintiffs Michael Grecco ("Grecco") and his company Michael Grecco Productions, Inc. ("MGPI," and together with Grecco, "Plaintiffs") are serial copyright litigants, who have a stable of copyright lawyers at their disposal. Plaintiffs have made a business out of litigation and enforcement whereby they use a team of U.S. or foreign attorneys to either negotiate a retroactive license for uses of photographic works or file a lawsuit in order to force a settlement and obtain settlement fees. Against this backdrop, Grecco sent a stern demand email to AF America in September 2020 regarding the use of several photographs in which he purportedly held the copyright, stating that a "retroactive licensing fee arrangement . . . must be reached otherwise a lawsuit will be initiated against" AF America. As AF America did not control the website where the photographs were located, it forwarded the email to its parent company located in Spain, age fotostock Spain, S.L. ("AF Spain"), which operates the website.

AF Spain's in-house counsel responded and notified Grecco, in a series of emails, that the photographs had been taken down and that neither AF Spain nor AF America had licensed or made any sales of the photographs. As AF Spain operated and controlled the website from Spain, AF Spain relayed that Grecco's claim, under U.S. copyright law, had no merit. Despite being put on notice that there were no viable grounds for a claim under the U.S. Copyright Act, Plaintiffs

proceeded to commence this lawsuit.  At the outset of this litigation, following counsel's investigation and review of documents, the undersigned likewise informed Plaintiffs that their claims lacked merit because there were no sales or downloads (either in the U.S. or anywhere in the world) and the Copyright Act is territorial.  Plaintiffs persisted in their claims, however, and did not broach settlement until the eve of summary judgment, after discovery disclosed what AF Spain's in-house counsel and AF America's outside counsel had maintained all along.  When settlement discussions proved unsuccessful, the parties both moved for summary judgment and the Court granted summary judgment in favor of AF America, dismissing all of Plaintiffs' claims with prejudice.

Although awards of costs and attorneys' fees are squarely within the Court's discretion, an award to Defendant of its reasonable attorneys' fees is appropriate here because Plaintiffs' copyright claims lacked both a legal and factual basis, and Plaintiffs were aware of the fatal flaws in their claims before commencement of this action.  Plaintiffs nevertheless named AF America as Defendant and owner of the website—even though they were made aware that AF Spain was the responsible party—and proceeded with the litigation, forcing Defendant to engage in discovery and move for summary judgment in order to defend the action.  Plaintiffs should be discouraged from such bad faith pursuits of objectively unreasonable claims, and Defendant should be compensated for its successful defense of the meritless action.  An award of the approximately $105,915.50 in attorneys' fees that Defendant incurred in this litigation is reasonable, as well as the $4,086.23 in taxable costs, given Plaintiffs' repeated assertion of legally and factually baseless arguments.

## STATEMENT OF FACTS

This case concerned four photographs of actors from *The X-Files* and *Xena: Warrior Princess* television shows (the "Photographs"), captured by Grecco for the studios behind the two shows. *See* Dkt. No. 1 ("Complaint" or "Cmpl.") at Ex. 1; Dkt. No. 38 ("Def. 56.1") ¶¶ 27–28; Dkt. No. 51 ("SJ Order") at 3. Since at least 2016, Grecco and his company, MGPI, have filed more than 100 copyright infringement actions—over these Photographs and other images—and have made litigation and enforcement a business by cajoling would-be defendants into pre-litigation settlements in the form of retroactive licenses and using the threat of mounting litigation costs against defendants to exact settlements before dispositive motions or trial. *See* Declaration of Nancy E. Wolff, dated October 22, 2021 ("Wolff Decl."), ¶¶ 3–4, Ex. A, Ex. B at 13:18–14:20. Grecco, who has a stable of law firms at his disposal, is ostensibly well counseled and well versed in copyright law. *See id.* Ex. B at 13:18–14:20. As Grecco testified during his deposition, he runs a "boutique copyright discovery and recovery service for a handful of photographers" whereby "[w]e find their work on the internet and we . . . use a team of attorneys in the United States or have a foreign partner that will either negotiate a retroactive license or file lawsuit [sic] and get some sort of settlement." *Id.* Ex. B at 13:18–14:5.

On September 3, 2020, Grecco sent an email to Defendant, notifying Defendant of the unauthorized use of the Photographs on agefotostock.com (the "Website") and demanding a retroactive license fee for the use. *See id.* Ex. C; Def. 56.1 ¶ 43. However, as Defendant established on summary judgment, Defendant did not own or control the Website. *See* Def. 56.1 ¶¶ 12, 15; SJ Order at 3. The owner and operator of the Website was Defendant's foreign parent, AF Spain, a company based in and operated from Spain. *See* Def. 56.1 ¶¶ 2, 4, 12, 14; SJ Order at 2–3. Because Defendant had no control over the content on the Website, it forwarded the email

to AF Spain to handle.  *See* Wolff Decl. Ex. C; Def. 56.1 ¶ 44; SJ Order at 6.

AF Spain's in-house counsel responded and explained how AF Spain received the Photographs from two contributors in Germany and the U.K. pursuant to license agreements, confirmed that the Photographs had not been licensed to any end-users, and stated that the Photographs would be removed from AF Spain's system.  *See* Wolff Decl. ¶ 5, Ex. C.  In a series of emails, Grecco continued to insist on a financial resolution, while AF Spain assured him that the Photographs had been taken down and that neither AF Spain nor AF America had licensed or made any sales of the Photographs, so AF Spain considered his claim, under the U.S. Copyright Act, to be without merit.  *See* Wolff Decl. Ex. C; Def. 56.1 ¶ 45; SJ Order at 6.  Despite being put on notice that there was no viable ground for a claim under U.S. law, Plaintiffs proceeded forward with the commencement of a lawsuit before this Court, alleging (1) direct infringement, (2) contributory and/or vicarious infringement, and (3) violations of 17 U.S.C. § 1202.  *See* generally Cmpl.  Plaintiffs also chose to wrongly name and attribute ownership of the Website to AF America in their Complaint, even though they were made aware that AF Spain was the owner of the Website (and the Website clearly identified AF Spain as the owner).  *See id.* ¶¶ 9, 15; Dkt. Nos. 36-1, 36-6.  As Grecco confirmed during his deposition, he simply did not believe the assurances of AF Spain.  *See* Wolff Decl. Ex. B at 164:8–165:9; Def. 56.1 ¶ 49; SJ Order at 6.

At the outset of this litigation, Defendant's counsel, after reviewing the relevant correspondence and documentation, again informed Plaintiffs, through their counsel, that Plaintiffs' claims were not viable, given the territoriality of the U.S. Copyright Act.  *See* Wolff Decl. ¶ 7.  Nonetheless, Plaintiffs persisted in their prosecution of the case, forcing Defendant to engage in discovery and seek summary judgment to defend against the action.  *See id.* ¶ 8.  On September 22, 2021, following cross-motions for summary judgment and oral argument on same,

4

the Court, in a short-form order, denied Plaintiffs' motion for partial summary judgment and granted Defendant's cross-motion for summary judgment in its entirety. *See* Dkt. No. 50. The Court stayed the case until it later issued a full opinion setting forth the reasoning for its ruling in favor of Defendant on October 5, 2021. *See id.*; SJ Order.

*First*, as the Court detailed in its opinion, "the Copyright Act does not extend its protections to unconsummated offers" and because "AF America, at most, only offered to license the Photographs, Grecco cannot prevail on its claim against AF America for directly infringing on his copyrights." SJ Order at 9–10, 14. *Second*, on Plaintiffs' secondary liability claim, the Court held that "given the limitation on the extraterritorial application of United States copyright law, Grecco's secondary liability claims cannot succeed," rejecting Plaintiffs' arguments on two of the "plus factors" that courts have used in analyzing whether conduct that occurred abroad can give rise to a copyright infringement claim: (1) direction of copyrighted material in the U.S., (2) when foreign acts are intended to, and do, have any effect within the U.S. *Id.* at 15–18. For the first factor, the Court concluded that "the general targeting of the American market does not establish a sufficient nexus between AF Spain's publishing of the specific copyrighted works at issue and the United States" and "[g]iven the absence of a more specific and tangible connection between AF Spain's conduct and the United States, the Court cannot conclude that AF Spain sufficiently directed the Photographs into the United States so as to give rise to a predicate domestic act." *Id.* at 16–17. For the second factor, the Court found that there were no effects in the U.S. because "no person in the United States ever purchased a license to the Photographs" and "Grecco can raise only broad concerns about the manner in which his business is affected when others offer to license his works in the United States . . . ." *Id.* at 17. *Third*, for Plaintiffs' Section 1202 claim regarding the removal or alteration of copyright management information, the Court held that Plaintiffs failed

"to present sufficient evidence to satisfy either the intention prong under § 1202(b)(1) or the knowledge prong under § 1202(b)(3)." *Id.* at 20.

The Clerk of the Court entered judgment in favor of Defendant on October 5, 2021, dismissing Plaintiffs' case with prejudice.  Dkt. No. 52.  Defendant thereafter sought leave of the Court, on October 15, 2021, to file this motion.  *See* October 15, 2021 Minute Entry.  In total, as of October 22, 2021, Defendant has incurred approximately $105,915.50 in attorneys' fees, based on the following breakdown of 329.7 total hours: Nancy Wolff billed 48.7 hours at $415 per hour; Sara Gates billed 232.8 hours at $305 per hour; and Elizabeth Safran (Altman) billed 48.2 hours at $305 per hour.  *See* Wolff Decl. ¶¶ 10–15, Ex. D.[1]  The matter was leanly staffed, and counsel made conscious efforts to work on different aspects of the case in order to avoid duplication of efforts to the maximum extent possible, and associates (with lower rates) handled the majority of the legal work, while being overseen by the partner, in order to further reduce the total fees billed. *See id.* ¶¶ 11, 16.  Defendant also incurred $4,086.23 in taxable costs, due to expenses for court reporters, deposition transcripts relied upon for summary judgment, translation of legal documents relied upon for summary judgment, and printing and delivery costs for courtesy copies to the Court. *See id.* ¶ 17, Ex. E.

## **ARGUMENT**

I.   **THE COURT SHOULD AWARD DEFENDANT ITS COSTS AND REASONABLE ATTORNEYS' FEES**

Under the Copyright Act, "the court in its discretion may allow the recovery of full costs by or against any party," and "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505; *see also* Fed. R. Civ. P. 54(d).  Though "[p]revailing

---

[1] The hourly rates charged were lower than the attorneys' typical hourly rate, based on an agreement with Defendant's insurer.  *See* Wolff Decl. ¶ 13.

plaintiffs and prevailing defendants are to be treated alike," there is "no precise rule or formula for making these determinations, but instead equitable discretion should be exercised . . . ." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (internal quotation marks and citation omitted). Courts typically consider factors such as

> frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" . . . so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner.

*Id.* at 534 n.19 (citation omitted). Objective unreasonableness is an important factor, but "courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988–89 (2016). For example, courts may award attorneys' fees "to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case." *Id.* at 1989 (citing *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593–95 (6th Cir. 2008)).

## A. Plaintiffs Knew That Their Case Was Baseless, Yet Still Proceeded

An award of costs and reasonable attorneys' fees to Defendant, as the prevailing party on summary judgment (*see* SJ Order),[2] is appropriate in this instance because Plaintiffs' claims were objectively unreasonable, and Plaintiffs were aware of the fatal flaws in their position before the commencement of this litigation yet continued undeterred in order to extract a settlement. "[C]laims that are without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable." *Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, No. 99 CIV.

---

[2] *See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (A "prevailing party" is the "party in whose favor a judgment is rendered . . . .").

9623, 2009 WL 4276966, at *5–6 (S.D.N.Y. Nov. 30, 2009) (internal citation omitted) (citing examples of cases that had no sufficient factual basis and cases that had no sufficient legal basis). Courts have also found that attorneys' fees were appropriate in cases involving objectively unreasonable claims where there were indicia of bad faith, such as a "warn[ing], before any action had been filed, that there was no colorable copyright infringement claim." *Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009); *see also Baker v. Urb. Outfitters, Inc.*, 431 F. Supp. 2d 351, 358 (S.D.N.Y. 2006) (inferring bad faith motivation from false allegations in the complaint), *aff'd*, 249 F. App'x 845 (2d Cir. 2007).

Here, Plaintiffs' claims were objectively unreasonable because they had no legal basis under the U.S. Copyright Act.  Plaintiffs asserted three claims in this action against Defendant based on the use of the Photographs on the Website: (1) direct infringement, (2) contributory and/or vicarious infringement, and (3) violations of 17 U.S.C. § 1202.  *See generally* Cmpl.  However, as Defendant's parent company, AF Spain, confirmed before the commencement of this litigation, the Website is operated by AF Spain, from Spain, and neither AF Spain nor AF America licensed or made any sales of the Photographs.  *See* Wolff Decl. Ex. C; SJ Order at 6.  Despite this clear warning, Plaintiffs decided to ignore AF Spain's assurances and commence this action in bad faith. *See* Wolff Decl. ¶ 6.  Moreover, rather than name or identify AF Spain in the Complaint as the owner of the Website, Plaintiff instead—in what was obviously a calculated effort—wrongly named AF America as Defendant and attributed ownership of the Website to AF America.  *See* Cmpl. ¶¶ 9, 15.

Plaintiff likewise refused to believe the assurances of Defendant's counsel during this action.  *See* Wolff Decl. ¶¶ 7–8.  At the outset of the case, after defense counsel investigated the facts and reviewed the relevant documentation, counsel reached out to Plaintiffs to again relay its

findings: that there were no sales or downloads of the Photographs and no infringing conduct that occurred in the U.S., so there was no basis for a claim under the U.S. Copyright Act, which is territorial in nature. *See id.* ¶ 7. Plaintiffs' counsel again dismissed counsel's affirmations and proceeded with the litigation. *See id.* ¶ 8. It was only after the parties engaged in discovery, which confirmed what AF Spain's in-house counsel and Defendant's counsel maintained all along, that Plaintiffs belatedly sought leave of the Court to add AF Spain as a defendant and, in tandem, sought a referral to the Magistrate Judge to assist with settlement discussions. *See id.* ¶ 9; June 22, 2021 Minute Entry; Dkt. No. 25. When Plaintiffs' requested leave was denied outright, and settlement discussions were unsuccessful, Plaintiffs continued to persist with the litigation, filing a motion for partial summary judgment on: (1) the validity of Plaintiffs' copyright ownership, and (2) Defendant's liability for infringement. *See* Dkt. No. 27. Defendant cross-moved for summary judgment in full, seeking to dismiss all of Plaintiffs' claims as a matter of law. *See* Dkt. No. 34. The Court agreed with Defendant's position, finding that Plaintiffs could not establish liability on either direct or secondary liability grounds. *See* SJ Order at 8–9.

Although a successful summary judgment motion does not ensure an award of attorneys' fees, the Court's opinion on summary judgment supports an award of reasonable fees in this instance, given the fatal flaws in Plaintiffs' claims. *See Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 546 F. Supp. 2d 120, 126 (S.D.N.Y. 2008) (reviewing summary judgment order to find that the plaintiff's copyright claim was objectively unreasonable); *Littel v. Twentieth Century-Fox Film Corp.*, No. 89 CIV. 8526(DLC), 1996 WL 18819, at *3 (S.D.N.Y. Jan. 18, 1996) (holding that "[i]t is true that a finding that defendants are entitled to summary judgment is not the equivalent of a finding that plaintiff's claims are objectively unreasonable," yet concluding that the question of the unreasonableness of this case's plaintiffs' claims was not a close one), *aff'd*

*sub nom. DeStefano v. Twentieth Century Fox Film Corp.*, 100 F.3d 943 (2d Cir. 1996).  *First*, for direct infringement, Plaintiffs argued that the Copyright Act protects against unconsummated offers to license copyrighted material, and that AF America made such an offer.  *See* SJ Order at 9.  Without even addressing the second point, the Court disagreed that an unconsummated offer to license a copyrighted work violates Section 106(3), citing the plain language of the Copyright Act—which requires transmission of a material object in which a work is fixed—and applicable case law.  *See id.* at 10.  The Court rejected Plaintiffs' heavy reliance upon the reasoning of a single case, which discussed unconsummated offers "in the context of rejecting the plaintiff's bid to recognize an even broader 'make available' right under the Copyright Act . . . ."  *Id.* at 11.  As evident from the text of the Copyright Act and the relevant case law, there was no legal basis for Plaintiffs' claim of direct infringement against AF America.

*Second*, on the secondary liability claim, Plaintiffs abandoned their vicarious infringement claim on summary judgment (*see* Dkt. No. 48 at 6 n.6), and instead argued that Defendant could be held contributorily liable for AF Spain's alleged conduct abroad based on either a contributory infringement or an alter ego theory.  *See* SJ Order at 8–9.  However, "given the limitation on the extraterritorial application of United States copyright law," the Court held that Grecco's secondary liability claims could not succeed because the Court could not first find that AF Spain's conduct fell within the scope of the Copyright Act.  *Id.* at 14, 18.  Specifically, the Court rejected Plaintiff's attempted application of two of the "plus factors" that courts have used in analyzing whether a predicate domestic act exists in connection with a copyrighted work made available online.  *See id.* at 15–18.[3]  For the first factor, the Court concluded that the "general targeting of the American

---

[3] The Court acknowledged that Plaintiffs did not contest that the Photographs were uploaded to servers outside the U.S.  SJ Order at 16.

market does not establish a sufficient nexus between AF Spain's publishing of the specific copyrighted works at issue and the United States" and "[g]iven the absence of a more specific and tangible connection between AF Spain's conduct and the United States, the Court cannot conclude that AF Spain sufficiently directed the Photographs into the United States so as to give rise to a predicate domestic act." *Id.* at 16–17.  For the second factor, the Court found that there were no effects in the U.S. because "no person in the United States ever purchased a license to the Photographs" and "Grecco can raise only broad concerns about the manner in which his business is affected when others offer to license his works in the United States . . . ." *Id.* at 17.  Like Plaintiffs' claim of direct infringement, there was also no basis for Plaintiffs' secondary liability claim because there was nothing to support a domestic predicate act.

*Third*, for the Section 1202 claim, the Court found that there was no evidence to support the elements of this claim.  *See id.* at 20; *see also Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.*, No. 01 CIV. 10135(SAS), 2003 WL 22434153, at *5 (S.D.N.Y. Oct. 24, 2003) (awarding fees where "the consistent lack of evidentiary support for plaintiffs' claims" supported a finding that their actions were objectively unreasonable).  Namely, Plaintiffs failed "to present sufficient evidence to satisfy either the intention prong under § 1202(b)(1) or the knowledge prong under § 1202(b)(3)."  SJ Order at 20.  As the Court noted, there was "not even evidence suggesting that the Photographs contained [copyright management information] when AF Spain obtained them from the two contributors."  *Id.*  The Court also declined to apply the adverse inference, requested by Plaintiffs, against AF America, finding Plaintiffs failed to establish that "AF Spain did anything other than appropriately respond to Grecco's take down order . . . ."  *Id.* at 21.  Because Plaintiffs' Section 1202 claim would depend on the adverse inference, in the absence of any evidence

favorable to Plaintiffs' position, the Court also granted summary judgment to AF America on this claim. *Id.*

The Court's summary judgment opinion confirmed the critical flaws in Plaintiffs' claims, which Plaintiffs were already made aware of before the commencement of the litigation and at the outset, by both AF Spain's in-house counsel and AF America's outside counsel. *See* Wolff Decl. ¶¶ 5, 7. Plaintiffs ignored these warnings and instead charged ahead with this litigation, driving up litigation costs and forcing Defendant to expend unnecessary attorneys' fees in its defense of this action. *See id.* ¶¶ 6, 8, 10. It was only late in the discovery process and on the eve of summary judgment—after Defendant produced documents to support what it had maintained all along—that Plaintiffs attempted to procure a settlement before summary judgment briefing; discussions, including those undertaken with the assistance of the Magistrate Judge, were ultimately unsuccessful. *See id.* ¶ 9. An award of reasonable attorneys' fees is therefore appropriate in light of the objective unreasonableness of Plaintiffs' claims and Plaintiffs' prior knowledge of same, which suggests that Plaintiffs pursued this litigation in bad faith.

**B.    An Award of Reasonable Attorneys' Fees to Defendant Would Be Faithful to the Purposes of the Copyright Act**

An award of reasonable attorneys' fees to Defendant in this action would also satisfy the Copyright Act's purposes and considerations of compensation and deterrence. "Compensation and deterrence, two equitable considerations that courts must also assess, exist for the dual purposes of incentivizing parties with strong claims to litigate them and deterring parties with weak claims from embarking on wasteful litigation." *Hughes v. Benjamin*, No. 17-CV-6493 (RJS), 2020 WL 4500181, at *4 (S.D.N.Y. Aug. 5, 2020). Relying on these considerations, courts have awarded attorneys' fees in order to deter plaintiffs from exploiting the court. *See, e.g.*, *Berry v. Deutsche Bank Tr. Co. Ams.*, 632 F. Supp. 2d 300, 305 (S.D.N.Y. 2009) (finding that an award of

attorneys' fees was justified under Section 505 where the plaintiff "demonstrated his capacity to pursue costly litigation asserting the same failed claims against an ever growing list of defendants"); *Baker*, 431 F. Supp. 2d at 359–60 ("An award of fees and costs is necessary to convince Baker and other like-minded plaintiffs that federal courts do not exist so that they can roll the dice on unreasonable allegations or so that they can seek fame and fortune from 'deep-pocketed' defendants."); *Torah Soft Ltd. v. Drosnin*, No. 00 CIV. 5650 (JCF), 2001 WL 1506013, at *6 (S.D.N.Y. Nov. 27, 2001) ("Where, as here, an infringement action is effectively a 'strike suit,' brought to compel settlement of a broader dispute, an award of fees is a beneficial deterrent"). Additionally,

> where a plaintiff's case is devoid of legal or factual basis, "[f]ailing to award attorneys' fees to defendants in such situations would invite others to bring similarly unreasonable actions without fear of any consequences. Under the circumstances of [such a] case, and 'to advance considerations of compensation and deterrence,' defendants must be compensated for being forced to defend against such a baseless action."

*Arclightz*, 2003 WL 22434153, at *3 (internal citation omitted).

Grecco, either individually or through his company, has shown himself to be a serial litigant, asserting copyright infringement claims over the same Photographs at issue and filing more than 100 copyright cases since 2016. *See* Wolff Decl. ¶ 3, Ex. A. Indeed, Grecco has made litigation and enforcement a business by cajoling would-be defendants into pre-litigation settlements in the form of retroactive licenses and using the threat of mounting litigation costs against defendants to exact settlements before dispositive motions or trial. *See* Wolff Decl. ¶ 4, Exs. A, B at 13:18–14:20. As Grecco testified during his deposition, he runs a "boutique copyright discovery and recovery service for a handful of photographers" whereby "[w]e find their work on the internet and we . . . use a team of attorneys in the United States or have a foreign partner that will either negotiate a retroactive license or file lawsuit [sic] and get some sort of settlement." *Id.*

13

Ex. B at 13:18–14:5.  An award of attorneys' fees is particularly appropriate where, as here, Plaintiffs have "engaged in a litigation strategy designed to extract settlements by imposing costs and litigation risks on defendants."  *Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, No. 20-2332-CV, 2021 WL 4536898, at *2 (2d Cir. Oct. 5, 2021) (affirming fee award) (internal quotation marks omitted).  The Court should award Defendant its costs and reasonable attorneys' fees to compensate Defendant for its successful defense of this action through summary judgment and to discourage Grecco, and other routine copyright litigants, from pursuing baseless litigation for the covert purpose of exacting a settlement that would be higher than the typical license fee for the copyrighted work.

### C.      Defendant's Attorneys' Fees and Costs Are Reasonable

In calculating attorneys' fees, courts in the Second Circuit determine a "presumptively reasonable fee" by multiplying a reasonable hourly rate by the reasonable number of hours expended on the case, often referred to as the lodestar method.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany Cty. Bd. Of Elections*, 522 F.3d 182, 189–90 (2d Cir. 2008); *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  To determine what is a reasonable rate, courts consider "the prevailing rates in the community 'for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *U.S. Media Corp. v. Edde Ent., Inc.*, No. 94 CIV. 4849 (MHD), 1999 WL 498216, at *2 (S.D.N.Y. July 14, 1999) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997)).  However, "[t]he actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded."  *Crescent Publ'g Grp., Inc.*, 246 F.3d at 151.

As set forth in the accompanying Declaration of Nancy Wolff, counsel's hourly rates are

consistent with, if not lower than, prevailing market rates for copyright counsel.  *See* Wolff Decl.
¶ 14.  The rates charged were $415 per hour for the partner and $305 per hour for the associates
assigned to the matter, which represent a reduction in the typical hourly rates for counsel of record,
based on the agreement with Defendant's insurer.  *See id.* ¶ 13.  Courts in this District have
approved higher hourly rates for copyright counsel.  *See Latin Am. Music Co., Inc. v. Spanish
Broad. Sys., Inc.*, No. 13-CV-1526 (RJS), 2020 WL 2848232, at *6 (S.D.N.Y. June 1, 2020)
(stating that "courts in this district have generally found hourly rates of $400 to roughly $750 to
be appropriate for partners in copyright and intellectual property cases" and "hourly rates of $200
to $450 to be reasonable [for associates] in copyright cases").

Additionally, the total number of hours billed by Defendant's counsel, 329.7 hours, was
reasonable and appropriate for this litigation through discovery and summary judgment.  The
matter was leanly staffed, and counsel made conscious efforts to work on different aspects of the
case in order to avoid duplication of efforts to the maximum extent possible.  *See* Wolff Decl.
¶¶ 11–12.  Moreover, the associates (with lower billing rates) handled the majority of the legal
work, while being overseen by the partner, in order to further reduce the total fees billed.  *See*
Wolff Decl. ¶¶ 15–16.  For example, of the counsel of record, the partner, Nancy Wolff, billed
48.7 hours, and the associate, Sara Gates, billed 232.8 hours.  *See id.* ¶ 15, Ex. D.  Another associate
assigned to the matter, Elizabeth Safran (Altman), who assisted with discrete tasks, billed 48.2
hours.  *See id.*  Counsel did not bill for paralegal time.  *See id.* ¶ 11.  A spreadsheet reflecting
contemporaneous time entries, including the date, hours expended, and corresponding task
descriptions, is attached to the Wolff Declaration as Exhibit D.  The work product yielded a
complete dismissal of Plaintiffs' case following summary judgment.

As for costs, which are "routinely award[ed] . . . to the prevailing party in copyright cases,"

Defendant seeks to recover $4,086.23 in costs incurred by its counsel, which were charged to Defendant.  Wolff Decl. ¶ 17, Ex. E; *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 484 (S.D.N.Y. 2001) (internal citation omitted).  The taxable costs included expenses for court reporters, deposition transcripts relied upon for summary judgment, translation of legal documents relied upon for summary judgment, and printing and delivery costs for courtesy copies to the Court.  *See* Wolff Decl. ¶ 17, Ex. E; *see also* 28 U.S.C. § 1920.  The costs are reasonable because they are not associated with routine office overhead, but rather are identifiable "out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03 Civ. 1548(GBD)(AJP), 2008 WL 4613752, at *15 (S.D.N.Y. Oct. 17, 2008) (internal citation omitted).

## CONCLUSION

Accordingly, Defendant respectfully requests that the Court grant its motion for its costs and reasonable attorneys' fees in this action.

Respectfully Submitted,

Dated: October 22, 2021
New York, New York

COWAN, DeBAETS, ABRAHAMS
& SHEPPARD LLP

By:  \_\_/s/ Nancy E. Wolff_____
Nancy E. Wolff
Sara Gates
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com
sgates@cdas.com

*Attorneys for Defendant Age Fotostock
America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Nancy E. Wolff, hereby certify that a true and correct complete copy of the foregoing Defendant Age Fotostock America, Inc.'s Memorandum of Law in Support of its Motion for Costs and Attorneys' Fees has been served on all counsel of record via the Court's CM/ECF service.

    /s/ Nancy Wolff    
Nancy E. Wolff
